UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
WILLIAM KLONER and ELIZABETH KLONER,

                        Plaintiffs,                    **MEMORANDUM & ORDER**
                                                                     13-CV-3171 (MKB)

                        v.

THE UNITED STATES OF AMERICA,

                        Defendant.
---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiffs Rabbi William Kloner and his wife, Elizabeth Kloner, commenced this action on June 3, 2013, against Defendant the United States of America, alleging negligence in violation of the Federal Tort Claims Act (the "FTCA"). (Compl., Docket Entry No. 1.) By Memorandum and Order dated July 21, 2016, the Court denied Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "July 21, 2016 Decision"). *Kloner v. United States*, --- F. Supp. 3d ---, ---, 2016 WL 3962975, at *1 (E.D.N.Y. July 21, 2016). On August 4, 2016, Defendant moved for reconsideration of the July 21, 2016 Decision. (Def. Mot. for Reconsideration, Docket Entry No. 43; Def. Mem. of Law in Supp. of Def. Mot. ("Def. Mem."), Docket Entry No. 44.) For the reasons set forth below, the Court denies Defendant's motion for reconsideration.

**I. Background**

      The Court assumes familiarity with the facts as set forth more fully in the July 21, 2016 Decision, *Kloner*, --- F. Supp. 3d at ---, 2016 WL 3962975, at *1–3, and provides a summary of

only the pertinent facts.[1]

Plaintiffs seek damages for injuries they sustained as a result of Rabbi Kloner's fall from a staircase during a United States Coast Guard ("USCG") retirement ceremony. (Compl. ¶ 14.) The USCG retirement ceremony took place on June 24, 2010, in the music hall of the Snug Harbor Cultural Center and Botanical Garden ("Snug Harbor"), a privately owned space in Staten Island. (*Id.*) On February 18, 2010, the USCG and Snug Harbor entered into a rental agreement that permitted the USCG to use the music hall during its upcoming New York Change of Command and Retirement Ceremony. (Def. Statement of Undisputed Facts Pursuant to Local R. 56.1 ("Def. 56.1") ¶ 1, Docket Entry No. 31.) The rental agreement barred the USCG from making alterations to Snug Harbor's facilities and equipment. (*Id.* ¶¶ 6–7.)

At the time of the USCG retirement ceremony, Rabbi Kloner was an 82-year-old retired Rear Admiral of the New York Naval Militia. (*Id.* ¶ 8.) The USCG asked the Rabbi to offer an invocation at the retirement ceremony because of his contract with USCG and because he was a personal and professional friend of the retiring captain who was being celebrated that day. (*Id.* ¶ 21; Compl. ¶ 15.)

Commander Carissa April, the head of planning and the primary point of contact for the USCG event, made "four or five visits" to the Snug Harbor Music Hall while planning and preparing for the retirement ceremony. (Statement of Carissa April ("April Statement") 1,

---

[1] The facts are recounted from the submissions supporting Defendant's motion for summary judgment, and are undisputed unless otherwise noted. The Court will refer to Plaintiff's responses to Defendant's 56.1 and Plaintiff's statement of additional facts as "Pl. 56.1"; to Defendant's 56.1 and Defendant's responses to Pl. 56.1 as "Def. 56.1"; and to Defendant's further replies to Plaintiff's responses as "Def. Reply 56.1."

annexed to Decl. of Steven S. Honigman ("Honigman Decl.") as Ex. E, Docket Entry No. 37.) [2] The day before the ceremony, the USCG held a "full rehearsal" at the Music Hall with all ceremony participants except Rabbi Kloner and the other clergy member participant, Monsignor Dorney. (*Id.*) During the rehearsal, members of the ceremony's "Official Party" were escorted to the stage by ushers, in part because of the bridge-like structure of the staircase that crossed over the musician's pit. (Statement of Kenneth Schnetzler ("Schnetzler Statement"), annexed to Honigman Decl. as Ex. H.) Commander April and her colleagues decided to provide the clergy with an unofficial escort, "New York Sector VIP Coordinator" Ydania Matos, "as a measure of safety and comfort" at the event. (Dep. of Carissa April ("April Dep.") 75:2–14, annexed to Honigman Decl. as Ex. C, Docket Entry No. 36.) According to Commander April, "[the clergy's] path to the stage [via the main staircase] was assumed," (*Id*. at 45:18–19), because they had Matos as an escort and because, as more informal members of the ceremony, they would be seated on the stage before the ceremony began, (*id.* at 45).

The main staircase was configured as a stand-alone unit without hand rails, and it ascended over an orchestra pit and onto the theater stage. (Def. 56.1 ¶ 12.) The stair structure consisted of two three-riser staircases to the left and right sides of a platform, leading to a platform landing. (Sector New York Admin. Investig. ("USCG Investigation") 4, annexed to Compl. as Ex. F.)[3] That landing, approximately four feet wide, then turned toward the stage.

---

[2] Plaintiffs' exhibits A–J, annexed to the Declaration of Steven S. Honigman, are grouped and docketed as Docket Entries No. 35–38. The Court cites to the docket entry for each exhibit referenced.

[3] Plaintiffs' Exhibit F, the USCG Investigation, is paginated by hand and annexed to the Complaint as four documents. (*See* Docket Entry No. 1.) The Court refers to the hand-written page numbers on each page of Exhibit F.

(*Id.* at 12.) The next stair led to another platform that appeared to cross the majority of the orchestra pit, and the final stair was steeper than the platform step before it. (*Id.* at 4; Pl. Reply 56.1 ¶ 11.) The final stair also had a walking surface with a five-inch "lip" or drop-off, which required a person to step down onto the stage floor. (USCG Investigation 6, 8.)

When Rabbi Kloner arrived, he was greeted by Matos, who escorted him to the wooden staircase in front of the stage, (Def. 56.1 ¶ 11), and accompanied him up the staircase and on to the stage, (*id.* ¶ 15). There, Matos showed Rabbi Kloner his seat and podium assignment for the ceremony. (*Id.* ¶ 16.) Rabbi Kloner then expressed a desire to descend the stage staircase to the ground floor in order to meet with acquaintances in the audience before the start of the ceremony. (*Id.* ¶ 17.) Matos escorted Rabbi Kloner down the stage staircase and left him on the ground floor while she attended to official duties at the VIP check-in table. (*Id.* ¶ 18.) Matos testified during her deposition that she had informed Rabbi Kloner that she would "come and get [him] when it's time to start," (Dep. of Ydania Matos ("Matos Dep.") 24:13–18, annexed to Honigman Decl. as Ex. A, Docket Entry No. 35), and that he "acknowledged" her statement by nodding,[4] (*id.* 24:19–25:6).

Shortly thereafter, the Master of Ceremony proceeded to the main stage to announce the "officer's call," requesting that all standing guests take their seats. (*Id.* ¶ 19.) Rabbi Kloner made his way to the stage staircase and began to ascend on his own, as Matos helped the just-arrived Monsignor to his seat on the stage. (*Id.* ¶ 26.) As the Rabbi approached the final step near the top of the staircase, he lost his balance and fell to his left, into the open-air orchestra pit. (*Id.* ¶ 28.) He fell six and a half feet to the bottom of the pit. (*Id.* ¶ 29.) Two USCG medical

---

[4] Plaintiffs dispute Matos' account, noting that when she gave a statement to the Coast Guard Investigating Officer four days after Rabbi Kloner's fall, she did not report her instruction to Rabbi Kloner. (*See* Pl. 56.1 ¶ 25 (citing Matos Dep. at 24–25).)

officers and Sector New York medical staff provided emergency medical services to the Rabbi "within seconds of the fall." (USCG Investigation 15.) Police and emergency medical service technicians arrived approximately fifteen minutes later, and within minutes of one another. (*Id.*) Rabbi Kloner was transported to a waiting ambulance approximately eighteen minutes after his fall. (*Id.*)

Rabbi Kloner suffered severe injury from his fall, including acute intracranial hemorrhaging and multiple rib fractures and lacerations. (Compl. ¶ 21.) At home, the Rabbi requires twenty-four-hour nursing care and cannot perform basic activities of daily life without aid from several caretakers. (*Id.* ¶ 25.) Mrs. Kloner incurred medical and other expenses for Rabbi Kloner's treatment, loss of employment opportunity while she cared for her husband, and loss of consortium. (*Id*. ¶¶ 42–55.)

## II. Discussion

### a. Standard of review

The standard for granting a motion for reconsideration is strict, and "[r]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Cedar Petrochem., Inc. v. Dongbu Hannong Chem. Co., Ltd.*, 628 F. App'x 793, 796 (2d Cir. 2015) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)); *Bank of Am. Nat'l Ass'n v. AIG Fin. Prods. Corp.*, 509 F. App'x 24, 27 (2d Cir. 2013) ("The standard for granting such a motion is strict . . . ." (quoting *Shrader*, 70 F.3d at 257)); *see also* Local Civ. R. 6.3 (The moving party must "set[] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked."); *Smith v. N.Y.C. Dep't of Educ.*, 524 F. App'x 730, 734 (2d Cir. 2013) ("To warrant reconsideration, a party must 'point

to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" (quoting *Shrader*, 70 F.3d at 257)).

It is thus "well-settled" that a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). A motion for reconsideration is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made." *Simon v. Smith & Nephew, Inc.*, 18 F. Supp. 3d 423, 425 (S.D.N.Y. 2014) (citations and internal quotation marks omitted). In order to prevail on a motion for reconsideration, "the moving party must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion." *Lichtenberg v. Besicorp Grp. Inc.*, 28 F. App'x 73, 75 (2d Cir. 2002) (citations and internal quotation marks omitted); *see also Stoner v. Young Concert Artists, Inc.*, No. 11-CV-7279, 2013 WL 2425137, at *1 (S.D.N.Y. May 20, 2013) ("A motion for reconsideration is an extraordinary remedy, and this Court will not reconsider issues already examined simply because [a party] is dissatisfied with the outcome of his case. To do otherwise would be a waste of judicial resources." (alteration in original)); *Henderson v. City of New York*, No. 05-CV-2588, 2011 WL 5513228, at *1 (E.D.N.Y. Nov. 10, 2011) ("In order to have been 'overlooked,' the decisions or data in question must have been put before [the court] on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court." (alterations in original) (citations omitted)).

### b. The July 21, 2016 Decision

In the July 21, 2016 Decision, the Court denied Defendant's motion for summary judgment. *Kloner*, --- F. Supp. 3d at ---, 2016 WL 3962975, at *1. The Court held, as a preliminary matter, that Plaintiffs' recovery was not barred under the *Feres* doctrine,[5] which precludes recovery against the United States under the FTCA for injuries that occur incident to military service. *Id.* at *7. The Court next considered Plaintiffs' negligence claim under the FTCA, noting that although the parties agreed that the USCG did not owe Plaintiffs a duty of care arising from the USCG's use of the Snug Harbor facility or creation of a dangerous condition, Plaintiffs argued that the USCG had assumed a duty of care to Rabbi Kloner and subsequently breached that duty of care. *Id*. at *8. The Court summarized Plaintiffs' argument that the USCG assumed a duty of care to Rabbi Kloner when it (1) assigned Matos to escort him to the stage via the main stairway, and (2) instituted a set of instructions known as the Operational Risk Management ("ORM") procedures, which required the USCG to detect hazards, assess risks and institute risk controls at events like the retirement ceremony. *Id.*

The Court first considered Plaintiffs' argument that the USCG assumed a duty of care when it assigned Matos to escort Rabbi Kloner to the stage via the main stairway. *Id.* at *8–9. Explaining the assumption-of-duty doctrine, the Court analogized to cases in New York state and federal district courts in which a defendant who owed no general duty of care to the plaintiff was nevertheless found to have assumed a duty of reasonable care. *Id.* at *9. The Court noted that, contrary to Defendant's argument that it was absolved of liability because it lacked control over the Snug Harbor premises, multiple cases involved "third-party tour operators or guides on properties they neither own nor occupy regularly but with which they are more familiar than

---

[5] *See generally Feres v. United States*, 340 U.S. 135, 146 (1950).

7

their patrons," and in such cases, "where the third party assumes a duty of the plaintiff, such as where one of its employees directs the participant to proceed in a particular matter, the third party may be held liable if its conduct placed the plaintiff in a more vulnerable position." *Id.* at *10 (citations and internal quotation marks omitted). The Court held that, on the facts before it, whether Defendant assumed a duty of care to Plaintiffs depended on whether Matos had, in fact, directed Rabbi Kloner up the main staircase to the stage and whether Rabbi Kloner had relied on Matos in choosing to take the main staircase to ascend the stage thereafter. *Id.* Thus, the Court could not hold, as a matter of law, that Defendant had not assumed a duty of care to Rabbi Kloner. *Id.*

Because the Court had already identified a genuine issue of fact as to Defendant's duty, it declined to reach the parties' arguments regarding the ORM manual and process, which Plaintiffs had set forth as an alternative argument for Defendant's assumption of a duty of care. *Id.* at *10. The Court then addressed the elements of breach and proximate cause, noting that "in New York, a breach is necessarily implied where a defendant is found to have assumed a duty of care" because the assumption-of-duty inquiry requires that a defendant's failure to exercise care increase the risk of harm to a plaintiff by inducing a plaintiff's reliance. *Id.* at *11. The Court therefore denied Defendant's motion because "a reasonable jury could find that the USCG assumed and breached a duty of care to Rabbi Kloner, which resulted in his injury." *Id.* at *12.

c. **Defendant's motion for reconsideration**

Defendant argues on reconsideration that the Court erred when it (1) permitted Plaintiffs to "raise a new cause of action in their opposition briefs," (2) decided the motion based on a duty of care without considering the law of premises liability and (3) held that there was a genuine issue of fact as to whether the USCG assumed a duty toward Rabbi Kloner. (Def. Mem. 2–3.)

Plaintiff opposes the motion, arguing that the Court correctly decided the motion for summary judgment and that Defendant is merely relitigating issues that it has already raised. (Pl. Mem. in Opp'n to Mot. for Reconsideration ("Pl. Opp'n") 4, 7, 9, Docket Entry No. 47.) The Court addresses each of Defendant's arguments in turn.

### i. New cause of action

Defendant argues that the Court overlooked "controlling case law" from the Second Circuit that "demonstrates that [P]laintiffs should have been precluded from raising and prosecuting a new cause of action in their opposition brief," (Def. Mem. 8), and argues that the Court "compounded [its] error in considering this unpled claim" when it "found that this very issue precluded summary judgment in favor of [Defendant]," (*id.* at 2). Defendant argues that the Court's consideration of this "new cause of action" led to "manifest injustice." (*Id.*) Plaintiff argues that Defendant's argument on reconsideration "fails the reconsideration standard" because "it is an argument that Defendant could have made but neglected to make in support of its motion." (Pl. Opp'n 4.)

#### 1. Plaintiffs' assumption-of-duty theory is not a "cause of action"

Defendant argues that the Court erred in "permitting [P]laintiffs to assert, for the first time, a new cause of action in their opposition" to summary judgment — "namely, that [Defendant] 'voluntarily assumed the duty of guiding Rabbi Kloner to his seat on the stage by a safe pathway away from a dangerous condition.'" (Def. Mem. 2 (alteration and citation omitted).) Defendant contends that the Second Circuit has "long held that 'it is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion.'" (*Id.* at 8 (quoting *Thomas v. Egan*, 1 F. App'x 52, 54 (2d Cir. 2001).) In support of this proposition, Defendant cites *Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010);

9

*Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006); and *Syracuse Broad. Corp. v. Newhouse*, 236 F.2d 522, 525 (2d Cir. 1956). Far from establishing the rule articulated by Defendant, the cited cases stand for the more nuanced proposition that it is not an abuse of discretion for a district court judge to disregard new claims brought for the first time in an opposition brief. *See Lyman*, 364 F. App'x at 701 ("Accordingly, we cannot conclude that the district court abused its discretion in failing to consider plaintiff's new theories of liability." (citing *Greenidge*, 446 F.3d at 361)); *Greenidge*, 446 F.3d at 361 (holding that, where the plaintiff had not provided the defendant with notice of the new theory being asserted, "the district court did not abuse its discretion when it determined that [the new theory] was untimely"); *Thomas*, 1 F. App'x at 54 (affirming on the merits a district court's grant of summary judgment on a retaliation claim alleged for the first time in an opposition brief, but noting that "[o]rdinarily, a district court presented with such a situation could grant plaintiff leave to amend her complaint, incorporating these new claims"); *Syracuse Broad. Corp.*, 236 F.2d at 525 (holding that the district court judge was "justified" in "brush[ing] aside a further charge, made in the briefs and affidavits, but not alleged in the complaint or subsequent statement of claims, nor in any way substantiated").

 Notwithstanding Defendant's characterization of the Second Circuit law, Plaintiffs did not "prosecute a cause of action . . . for the first time in a brief in opposition" to Defendant's motion for summary judgment. (Def. Mem. 8.) As the Court explained in the July 21, 2016 Decision, the assumption-of-duty negligence doctrine was articulated by Justice Cardozo in *H.R. Moch Co. v. Rensselaer Water Co.*, 247 N.Y. 160, 167 (1928). In *H.R. Moch*, the New York Court of Appeals affirmed the New York Appellate Division's decision to dismiss an action against Rensselaer Water Company for its failure to extinguish a fire before the fire

reached the plaintiff's property. *See H.R. Moch*, 247 N.Y. at 163. The Court of Appeals identified an assumed "duty to go forward" that may arise as part of an "action . . . for a common-law tort." *Id.* at 168. The court explained that if a plaintiff could establish a "relation [between the plaintiff and the defendant] involving in its existence a duty of care irrespective of a contract, a tort may result . . . from acts of omission as of commission in the fulfillment of the duty." *Id.* at 167. Based on the Court of Appeals' reasoning, a plaintiff's ability to establish that the defendant owed a duty of care did not itself constitute a cause of action, but required a further showing of "negligent performance" of that duty in order to allege an action in tort. *Id.* at 168. More recent New York Court of Appeals and Second Circuit cases reflect this understanding of the assumption of duty as a theory that satisfies one of the multiple elements a plaintiff must allege to plead a claim for negligence.[6] *See Tavaris v. Lelakis*, 143 F.3d 733, 736 (2d Cir. 1998) (describing the assumption of duty as a theory that plaintiffs argued to support their negligence action); *Heard v. City of New York*, 82 N.Y.2d 66, 72 (1993) (referring to an assumed-duty "theory of reliance" that exposes a defendant to liability in a negligence action); *Nallan v. Helmsley-Spear, Inc.*, 50 N.Y.2d 507, 520–22 (1980) (considering plaintiffs' "theory" that the defendant "had assumed a duty, the *negligent performance of which* could lead to liability, even if there was no legal obligation in the first instance" (emphasis added)).

Defendant does not explain why Plaintiffs' argument regarding the assumption of a duty of care should be considered a "cause of action" or a "claim" rather than an argument or theory in support of Plaintiffs' negligence claim under the FTCA. (*Id.* at 8–9.) Accordingly, the

---

[6] To establish a prima facie case of negligence under New York law, a plaintiff must show: (1) that the defendant owed the plaintiff a duty of care; (2) that the defendant breached that duty; and (3) that the plaintiff suffered damages substantially as a result of that breach. *Pasternack v. Lab. Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir.) (citing *Lombard v. Booz–Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002)), *as amended* (Nov. 23, 2015).

11

Second Circuit law that Defendant cites does not support its position, and Defendant has not met its burden to identify controlling law that the Court overlooked in considering Plaintiffs' assumption-of-duty theory. *See Cedar Petrochem.*, 628 F. App'x at 796.

### 2. Plaintiffs' assumption-of-duty theory is not "new"

Even if the law considered the assumption-of-duty theory advanced by Plaintiffs to constitute a cause of action or a claim — rendering applicable the Second Circuit law disapproving of plaintiffs who advance a new claim in an opposition to summary judgment — Defendant received adequate notice of this theory from the Complaint.

The Second Circuit's reluctance to permit new causes of action to proceed when they are raised for the first time during motion practice stems from the general precept that "[a] claim must be set forth in the pleadings, in order to give defendants fair notice of the nature of the plaintiff's claim." *Thomas*, 1 F. App'x at 54. *See also Lyman*, 364 F. App'x 699, 701–02 ("We have reviewed plaintiff's complaint and interrogatory response, and we conclude that they were insufficient to put defendant on notice of plaintiff's new negligence claims."); *Greenidge*, 446 F.3d at 361 ("[T]he central purpose of a complaint is to provide the defendant with notice of the claims asserted against it . . . .").

Here, the Complaint alleges that the USCG "had a duty to identify potential risks and hazards to personnel participating in the Ceremony and to exercise due care to . . . control such risks and hazards by applying appropriate management policies and procedures." (Compl. ¶ 29.) The Complaint then explains the ORM procedures and states that the "employees of the [USCG] who were responsible for planning and carrying out the Ceremony were responsible for complying with the [ORM] policy and the procedures to implement it." (*Id.* ¶ 30.) Finally, the Complaint contends that "[a] proper implementation of the ORM . . . would have caused the

12

[USCG] to position a safety handrail or guardrail, or station a person at the stairs, platform or stage, to provide immediate assistance to persons walking the pathway . . . ." (*Id.* ¶ 38.) Although the Complaint does not expressly state that the USCG assumed a duty to Plaintiffs, it states a negligence claim based in part on a theory that the USCG assumed a duty to identify certain risks and implement risk-mitigating procedures when it implemented the ORM procedures. Consistent with this claim, Plaintiffs argued in their opposition to Defendant's motion for summary judgment that the USCG assumed a duty of reasonable care to Rabbi Kloner when it (1) assigned Matos to escort him to the stage via the main stairway, and (2) instituted the ORM policy, which required the USCG to detect hazards, assess risks and institute risk controls at events like the retirement ceremony. (Pl. Mem. in Opp'n to Def. Mot. for Summ. J. ("Pl. Summ. J. Mem.") 13, Docket Entry No. 33.) While Defendant clearly did not anticipate Plaintiffs' inclusion of an alternative argument to support the assumption-of-duty theory, Defendant had adequate notice of Plaintiffs' general theory that the USCG had assumed a duty to Rabbi Kloner. *See Greenidge*, 446 F.3d at 361. Thus, the assumption-of-duty theory itself was not "new," as Defendant argues. (Def. Mem. 8.)

### 3. Defendant did not present this argument to the Court on the underlying motion

"In order to have been 'overlooked,' the decisions or data in question must have been put before [the court] on the underlying motion." *Henderson*, 2011 WL 5513228, at *1 (quoting *Range Road Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000)); *see also Cedar Petrochem.*, 628 F. App'x at 797 (holding that where the moving party introduced a new argument "only after the district court had found in favor of [the opposing party] and rejected" the moving party's initial theory, "the proper time for [the argument on reconsideration] was trial"); *Litchenberg*, 28 F. App'x at 75 (noting that a party must

13

"demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion").

Having been "deeply prejudiced" by Plaintiffs' "new cause of action" in the opposition to Defendant's motion for summary judgment, Defendant nevertheless failed to raise any such argument in its reply brief to Plaintiffs' opposition. (*See generally* Def. Reply in Supp. of Def. Mot. ("Def. Summ. J. Reply"), Docket Entry No. 39.) In its reply to Plaintiffs' opposition, Defendant noted in passing that "[P]laintiffs argued, for the first time, that USCG's liability 'arises under the assumed duty doctrine,'" (*Id.* at 2), but neither explained further nor argued that the Court should deny Plaintiffs the opportunity to present their theory. Defendant's attempt to challenge Plaintiffs' assumption-of-duty theory on these grounds "only after [the Court] found in favor of [Plaintiff] and rejected" Defendant's arguments on the underlying motion does not warrant reconsideration of the Court's decision to permit Plaintiffs to advance their theory. *See Cedar Petrochem.*, 628 F. App'x at 797.

Because the Court did not overlook relevant controlling decisions or evidence that was put before it on the underlying motion, Defendant's motion for reconsideration is denied as to the Court's decision to consider Plaintiffs' assumption-of-duty theory.

### ii. Premises liability

Defendant argues that the Court erred in finding a triable issue of fact as to Defendant's liability because "[P]laintiffs' assumed duty claim is inextricably intertwined with a premises liability claim, as both claims are rooted in the allegation that the Snug Harbor Music Hall stage staircase was 'unreasonably dangerous.'" (Def. Mem. 10.) In substance, Defendant argues that because the USCG did not "own, occupy, control, or employ a special use of the Snug Harbor Music Hall," it cannot be held liable for a "dangerous condition" on that property. (*Id.*

at 10–11.) Plaintiffs argue that Defendant simply reiterates the same argument it made in the underlying motion for summary judgment and, in any event, has misconstrued the case law. (Pl. Opp'n 8.)

In the July 21, 2016 Decision, the Court noted that the parties did not dispute that the USCG lacked control or ownership over Snug Harbor, but that Plaintiffs' claim did not rely on premises liability to create the duty owed by the USCG. *Kloner*, --- F. Supp. 3d at ---, 2016 WL 3962975, at *8. Instead, Plaintiffs relied on an assumption-of-duty theory. *Id.* The Court thus rejected Defendant's argument that it could not be held liable for dangerous conditions on the premises, expressly citing cases that it found "instructive because they involve third-party tour operators or guides on properties they neither own nor occupy regularly but with which they are more familiar than their patrons." *Id.* at *10 (citing *Giuffra v. Vantage Travel Serv., Inc.*, No. 13-CV-6880, 2015 WL 3457246, at *4 (S.D.N.Y. June 1, 2015); *Carley v. Theater Dev. Fund*, 22 F. Supp. 2d 224, 229 (S.D.N.Y. 1998); *Maraia v. Church of Our Lady of Mt. Carmel*, 828 N.Y.S.2d 525, 526 (App. Div. 2007); *Cohen v. Heritage Motor Tours*, 618 N.Y.S.2d 387, 389 (App. Div. 1994)).

Raising the same argument of premises liability on reconsideration, Defendant has relied on a single, non-controlling case whose reasoning is not inconsistent with the Court's reasoning in the underlying summary judgment decision. (Def. Mem. 11 (citing *Knight v. Realty USA.com, Inc.*, 947 N.Y.S.2d 693, 694 (App. Div. 2012).) The plaintiff in *Knight* tripped over a platform located in the basement of a house that was open for viewing and sale. *Knight*, 947 N.Y.S.2d at 693. The plaintiff subsequently brought suit for negligence against the real estate agent and brokers who arranged the open house. *Id.* Defendant contends that the Appellate Division "held that since the 'defendants established that they did not owe the plaintiff a duty of care with

15

respect to any defective or dangerous conditions on the premises,' the plaintiff's other causes of action based in negligence — including whether the defendant 'assumed a duty to repair [the dangerous condition] or to warn others about it' — merited dismissal as a matter of law." (Def. Mem. 11 (quoting *Knight*, 947 N.Y.S.2d at 694).) Defendant mischaracterizes the holding in *Knight*.

The court in *Knight* held that the defendant brokers did not owe the plaintiff a general duty of care as to the dangerous condition on the property because the defendants did not own, occupy or control the premises. *Knight*, 947 N.Y.S.2d at 694. The court then noted that "[i]n response thereto, plaintiff failed to raise a triable issue of fact," and that "[c]ontrary to plaintiff's contentions, the evidence does not establish that [the defendants] assumed a duty to repair the platform or to warn others about it, nor does it establish that defendants may be liable under a 'special use' theory of liability." *Id.* at 694–95 (citing generally *Gauthier v. Super Hair*, 762 N.Y.S.2d 736, 737 (App. Div. 2003)).

In so holding, the court in *Knight* relied on *Gauthier*, 762 N.Y.S.2d at 737. *Knight*, 947 N.Y.S.2d at 694-95. *Gauthier* involved a plaintiff who sustained injuries when she fell into a hole in the parking lot of a building leased by the defendant, Super Hair. *Gauthier*, 762 N.Y.S.2d at 737. Noting that the common area was not under Super Hair's control, the court held that although the plaintiff had failed to raise a triable issue of fact for premises liability, there were "triable issues of fact whether the proprietor of [the defendant company] directed plaintiff to exit the leasehold premises through the side door and, if so, whether such conduct exacerbated the risk to plaintiff." *Id.* The court in *Knight* and the case on which it relied, *Gauthier*, considered the assumption-of-duty theory as a distinct basis for a defendant's duty,

16

and there is no indication that such a theory is contingent on a defendant's ownership or control of a premises.

Defendant's re-argument, which attempts again to ground Plaintiffs' claim in a premises liability theory of negligence, has not persuaded the Court that it overlooked controlling law or, for that matter, non-controlling law, in its decision to consider Plaintiffs' assumption-of-duty theory independently of a premises liability theory. Because a motion for reconsideration is not "an occasion for repeating old arguments previously rejected," *Simon*, 18 F. Supp. 3d at 425, Defendant's motion is denied as to the "inextricable" relationship between Plaintiffs' assumed-duty theory and a premises liability theory, (Def. Mem. 10).

### iii. Assumption of duty

Defendant argues that "the undisputed record establishes that: (1) Rabbi Kloner did not rely to his detriment on Ms. Matos; and (2) Ms. Matos did not place Rabbi Kloner in a more vulnerable position or cause Rabbi Kloner to detrimentally rely on Ms. Matos." (*Id.* at 12.) Defendant relies on *Tavarez v. Lelakis*, 143 F.3d 744, 747 (2d Cir. 1998), to further argue that "even if Ms. Matos had assumed a voluntary duty when she greeted Rabbi Kloner and led him to the stage, such a duty was not of infinite duration" and was discharged when Matos left Rabbi Kloner to socialize with guests on the ground floor. (*Id.* at 15.) Plaintiffs argue that Defendant's argument is not only "another attempted 'bite at the apple,'" but also a "profound[] misrepresent[ation of] the nature of Plaintiff's claim and the reasoning of the Court's decision denying summary judgment." (Pl. Opp'n 9.)

#### 1. Defendant has not identified facts that the Court overlooked

Defendant has not identified any facts that the Court overlooked in the July 21, 2016 Decision and instead has attempted to reconstruct its argument, from the underlying motion for

17

summary judgment, that Rabbi Kloner "'severed the nexus between the alleged breach of duty and his purported damages' when he chose to climb the staircase without Matos' aid." *Kloner*, --- F. Supp. 3d at ---, 2016 WL 3962975, at *7; (*see* Def. Mem. 15). Indeed, Defendant points to the undisputed facts in the record and reargues the assumption-of-duty inquiry based on those facts. (*See, e.g.*, Def. Mem. 13 ("These facts are all undisputed, and as a matter of law, [P]laintiffs cannot establish that Ms. Matos failed to exercise due care or that Rabbi Kloner was, at the moment he fell, relying on Ms. Matos."); *id.* at 15 ("[T]here is no basis to presume that Rabbi Kloner's solo walk across the stage was an inherently risky activity that would require Ms. Matos' continued presence.").) In the July 21, 2016 Decision, the Court expressly considered and rejected Defendant's argument that, as a matter of law, Rabbi Kloner did not detrimentally rely on Matos' instructions or direction. *Kloner*, --- F. Supp. 3d at ---, 2016 WL 3962975, at *9 ("Defendant argues that *Cohen* is inapposite because 'Matos did not direct Rabbi Kloner to walk up the stage staircase by himself, nor did Matos inform Rabbi Kloner that the safest route to the stage was the stage staircase.'"). As explained above, a motion for reconsideration is not "an occasion for repeating old arguments previously rejected," *Simon*, 18 F. Supp. 3d at 425, and Defendant's attempt to revive failed arguments with increased force does not merit the Court's reconsideration.

### 2. Defendant has not identified controlling law that the Court overlooked

Separately, Defendant appears to argue that the Court should reconsider the July 21, 2016 Decision because *Tavarez* is more instructive than the cases to which the Court cited. (Def. Mem. 13–14.) "A mere disagreement with the Court's legal determination is not a valid basis for reconsideration." *E.E.O.C. v. Bloomberg L.P.*, 751 F. Supp. 2d 628, 651 (S.D.N.Y. 2010); *see also Lolonga-Gedeon v. Child & Family Servs.*, 144 F. Supp. 3d 438, 441 ("Defendant's

18

disagreement with the Court's reading [of a case] is not a basis for reconsideration.");

*R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 512 (S.D.N.Y. 2009) ("A party's fundamental disagreement with a court's legal analysis and conclusions as to a matter fully considered does not serve as sufficient ground to warrant reconsideration of the court's decision."); *Mikol v. Barnhart*, 554 F. Supp. 2d 498, 502 (S.D.N.Y. 2008) ("Plaintiff's 'disagreement' with our prior determination is not an appropriate ground for reconsideration." (citation omitted)); *Alzamora v. Village of Chester*, 534 F. Supp. 2d 436, 439 (S.D.N.Y. 2008) ("The movant's disagreement with the court's interpretation of precedent is not a proper ground for reconsideration.").

In the July 21, 2016 Decision, the Court relied on *Tavarez* for a clear statement of the assumption-of-duty doctrine but found several other cases more factually analogous. *Kloner*, --- F. Supp. 3d at ---, 2016 WL 3962975, at *8–10. Defendant can disagree with the Court, but such disagreement is not a basis for reconsideration. *See Bloomberg*, 751 F. Supp. 2d at 651.

### III. Conclusion

For the foregoing reasons, the Court denies Defendant's motion for reconsideration.

SO ORDERED:

    s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: October 11, 2016
       Brooklyn, New York